IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK BERNARD INGRAM, | § | |
| TDCJ No. 1669001, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:20-cv-2544-N-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Patrick Bernard Ingram, a Texas prisoner, has filed a *pro se* 28 U.S.C. § 2254 habeas application challenging the denial of his early release to parole based on the conditions of his confinement during the ongoing COVID-19 pandemic. *See* Dkt. No. 6. United States District Judge David C. Godbey has referred this case to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) and a standing order of reference. The State has responded to Ingram's amended habeas petition. *See* Dkt. No. 15. And Ingram has replied, *see* Dkt. No. 17, and has now filed a Motion for Temporary Restraining Order [Dkt. No. 18] (the TRO Motion).

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the TRO Motion and deny Ingram federal habeas relief.

**Applicable Background**

"At trial, a jury convicted Ingram of two counts of indecency with a child based on Ingram exposing himself to two children, but during Ingram's state habeas

proceedings, the Texas Court of Criminal Appeals [the CCA] vacated one of the counts as a violation of the Double Jeopardy Clause." *Ingram v. Davis*, No. 16-11388, 2017 WL 6506585, at *1 (5th Cir. June 5, 2017). This Court then denied his initial Section 2254 application, challenging the remaining state conviction. *See Ingram v. Davis*, No. 3:14-cv-1748-N-BH, 2016 WL 4597511 (N.D. Tex. Aug. 5, 2016), *rec. accepted*, 2016 WL 4593514 (N.D. Tex. Sept. 2, 2016), *C.O.A. denied*, 2017 WL 6506585 (5th Cir. June 5, 2017).

Applicable to this case, Ingram next initiated an action through a Motion Asking the Federal Court to Exercise Jurisdiction Ordering Special Condition Parole, which was opened as requesting relief under 42 U.S.C. § 1983 but was ultimately construed as seeking habeas relief. And, after Ingram filed a Motion to Stay the Proceedings and Reply to the U.S. Magistrate's Findings, in which he stated that he agreed with the undersigned's recommendation but requested that the Court stay, rather than dismiss, his proceeding, the Court denied the motion to stay and abate and dismissed Ingram's action without prejudice for failure to exhaust his state court remedies. *See Ingram v. Davis*, No. 3:20-cv-780-N-BN, 2020 WL 3038583 (N.D. Tex. May 7, 2020), *rec. accepted*, 2020 WL 3036615 (N.D. Tex. June 5, 2020).

After entry of judgment, Ingram moved for an injunction, asserting that he had now exhausted his state court remedies. *Cf. Ex parte Ingram*, Tr. Ct. No. W09-52629-M(E) (194th Jud. Dist. Ct., Dallas Cnty., Tex.) (State's May 5, 2020 response to his state habeas application, asserting that it should be dismissed as a subsequent writ and, alternatively, that Ingram's sentence is not cruel and unusual); *Ex parte Ingram*,

WR-79,416-10 (Tex. Crim. App. July 15, 2020) (dismissing state habeas application without written order). And the Court determined that his habeas claims were not successive and possibly exhausted and that, because the Court possessed subject matter jurisdiction over them, it would open a new action – this case – to address his claims. *See Ingram v. Dir., TDCJ-CID*, No. 3:20-cv-780-N-BN, 2020 WL 5057401 (N.D. Tex. Aug. 26, 2020).

## The TRO Motion

Before addressing the merits of Ingram's latest habeas application, the Court should consider the TRO Motion, through which he asserts that he should be released based on the allegedly cruel and unusual conditions of his confinement.

Ingram specifically explains that, beginning in June 2020, he was housed in a medical recovery dorm after testing positive for COVID-19, where he was treated "for lingering effects of the virus, such as trouble breathing" and "chest pains." Dkt. No. 18 at 3. In November 2020, new inmates arrived at his unit, who were neither isolated nor tested before being placed in the general population. *See id.* According to Ingram, this coincided with a spike in infections at the unit. *See id.* at 3-4. And, on December 4, 2020, he was moved from medical recovery to C-4 dorm and into a cell with a known water leak, a leak that officials have not addressed to his satisfaction. *See id.* at 4. He further asserts, more generally, that the current inmate population makes it "impossible to social distance" and that all these conditions have raised his blood pressure and therefore put his "health at risk." *Id.* at 5.

"To obtain a temporary restraining order, an applicant must show entitlement

to a preliminary injunction," and "[t]he same four-factor test for preliminary injunctions also has been extended to temporary restraining orders," because "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (citations and internal quotation marks omitted).

For the Court to grant either, Ingram must "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

First, to the extent that the relief sought in the TRO Motion – release from confinement based on conditions alleged to be unconstitutionally cruel – may be made in an action seeking habeas relief, *cf. Cheek v. Warden of Fed. Med. Ctr.*, ___ F. App'x ____, No. 20-10712, 2020 WL 6938364, at *1-*2 (5th Cir. Nov. 24, 2020) (per curiam), Ingram's allegations do not reflect that he is substantially likely to prevail on an Eighth Amendment violation based on the conditions alleged, which would require that he

> prove that [he was] exposed "to a substantial risk of serious harm" and "that prison officials acted or failed to act with deliberate indifference to that risk." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). The presence

of a substantial risk is an objective inquiry. *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Deliberate indifference, however, is subjective; it requires a showing that prison officials had actual knowledge of a risk and disregarded it. *Id.* Knowledge may be inferred from the circumstances, particularly where the risk is obvious. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

*Valentine v. Collier*, 978 F.3d 154, 162-63 (5th Cir. 2020).

In *Valentine*, the United States Court of Appeals for the Fifth Circuit addressed Texas prison officials' response to the spread of COVID-19 at the Pack Unit, and observed that this circuit's

> Eighth Amendment precedent in the context of infectious disease, though limited, instructs that TDCJ met its constitutional obligations. We have twice held that testing and treating inmates who were exposed to tuberculosis is enough to establish that prison officials were not deliberately indifferent to the risk of disease. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001); *Wallace v. Dallas Cnty.*, 51 F.3d 1045 (5th Cir. 1995) (per curiam). Here, even recognizing that COVID-19 poses a greater risk than tuberculosis, any argument that TDCJ "evince[d] a wanton disregard for any serious medical needs" is dispelled by the affirmative steps it took to contain the virus. *Gobert*, 463 F.3d at 346 (internal quotation omitted).

*Id.* at 163-64; *see also id.* at 165 ("[T]he narrow question before us is whether Plaintiffs have proven a constitutional violation. And under governing precedent, their burden is 'extremely high.' The Eighth Amendment does not mandate perfect implementation. And 'prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.' TDCJ's measures may have been unsuccessful. But they were not unconstitutional." (citations omitted)).

Similarly, Ingram's own allegations indicate that officials at his unit did not disregard the risks the virus has presented and, in fact, cared for Ingram for several months once he was infected.

But, even if Ingram could prevail on the first two prongs of the TRO standard, he has requested accelerated injunctive relief in a habeas proceeding and thus cannot prevail on prongs 3 and 4.

As another federal district court in this state has explained in a similar context,

> [a]ny injunction directed at state prison authorities presumably causes some level of inconvenience for public officials and requires the expenditure of some amount of taxpayer funds, thus resulting in damage to Respondent and the public interest both. *See* 18 U.S.C. § 3626(a)(2) (when considering a preliminary injunction, a "court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief"); *see also Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003) ("Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order.") (citation omitted). Petitioner does not show that his threatened injury outweighs the former, or that the injunction will not cause the latter, and he therefore falls short of unequivocally demonstrating the need for the extraordinary remedy of a preliminary injunction.

*Shields v. Thaler*, C.A. No. C-12-319, 2013 WL 620378, at *3 (S.D. Tex. Jan. 25, 2013).

The Court should therefore deny the TRO Motion.

## Habeas Petition

I.    <u>Legal Standards</u>

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

This is because, "[u]nder AEDPA, state courts play the leading role in

assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, ___ S. Ct. ____, No. 19-1302, 2020 WL 7327827, at *8 (Dec. 14, 2020) (per curiam). So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 2020 WL 7327827, at *1 (citation omitted), and its "framework applies to federal review of state court decisions regarding parole determinations," *Nelms v. Dir., TDCJ-CID*, No. 3:18-cv-302-B-BN, 2020 WL 6293144, at *5 (N.D. Tex. Oct. 6, 2020) (citing *Powell v. Cooper*, 595 F. App'x 392, 396-97 (5th Cir. 2014) (per curiam)), *rec. accepted*, 2020 WL 6290329 (N.D. Tex. Oct. 26, 2020).

So, even as to habeas challenges to parole determinations exhausted in state court, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies "beyond any possibility for fairminded disagreement." *Shinn*, 2020 WL 7327827, at *1 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). And "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – is "'the only

question that matters.'"" *Id.* at *8 (quoting *Richter*, 562 U.S. at 102); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 2020 WL 7327827, at *5 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have

emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th

Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the

extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford*

*v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination…. In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the

doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

II.    <u>Analysis</u>

      Even if Ingram's current claims are properly exhausted and thus not procedurally defaulted, *but see* Dkt. No. 15 at 4-7, he has not shown that the CCA's denial of his state habeas application challenging his being denied early release to parole was unreasonable.

      First, there generally is no constitutional right to conditional release prior to the expiration of a valid sentence. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Moore v. Davis*, No. A-18-CA-104-LY, 2018 WL 1902689, at *3 (W.D. Tex. Apr. 20, 2018) ("Parole is a privilege, not a right, even after an inmate accrues the minimum amount of time-served credit necessary to be eligible for parole." (citing *Greenholtz*, 442 U.S. at 7)), *rec. adopted*, Dkt. No. 14 (W.D. Tex. May 7, 2018).

      Even so, is settled that "[a] constitutional expectancy of early release exist[ed] in Texas' mandatory supervision scheme in place for crimes committed before September 1, 1996." *Kirsch v. Quarterman*, Civ. A. No. H-07-524, 2008 WL 3003919,

at *4 (S.D. Tex. Aug. 1, 2008) (citing TEX. GOV'T CODE ANN. § 508.149(b); *Malchi v. Thaler*, 211 F.3d 953, 957-59 (5th Cir. 2000)); *see also Gonzales v. Thaler*, No. 2:09-cv-121, 2011 WL 4014326, at *2 (N.D. Tex. Aug. 19, 2011) ("The Fifth Circuit recognizes that prior to September 1, 1996, 'the TDCJ-CID had no discretion in deciding when or if to release an inmate on mandatory supervision,' but that as of September 1, 1996, a discretionary mandatory supervision scheme passed by the Texas Legislature took effect." (quoting *Teague v. Quarterman*, 482 F.3d 769, 774-75 (5th Cir. 2007))), *rec. adopted*, 2011 WL 3927057 (N.D. Tex. Sept. 7, 2011).

But "[p]arole and mandatory supervision release involve separate and distinct concepts and therefore the principles which apply to each are not interchangeable. Parole, as distinguished from mandatory supervision release, is not a matter of right, and the Texas parole statute does not create a liberty interest in being released on parole." *Barnes v. Cockrell*, No. 3:01-cv-823-J, 2002 WL 1878548, at *2 (N.D. Tex. Aug. 12, 2002) (citing *Williams v. Briscoe*, 641 F.2d 274, 276-77 (5th Cir. Unit A Mar. 1981)).

And, because Ingram was convicted of indecency with a child, in violation of Texas Penal Code Section 21.11, *see* Dkt. No. 15-1, Ex. A., he is not eligible for release to mandatory supervision, *see* TEX. GOV'T CODE ANN. §§ 508.147(a) & 508.149(a)(5). So it was not unreasonable for the CCA to deny his habeas petition challenging the denial of his release to parole.

Further, to the extent that Ingram attempts to bring (and may bring) an Eighth Amendment claim through his habeas petition, it should be denied for the

reasons explained above, in the context of the TRO Motion.

The Court should therefore deny Ingram's habeas application.

**Recommendation**

The Court should deny the Motion for a Temporary Restraining Order and the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 30, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE